**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| **GERALD BERRY,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **No. 2:14-cv-02070-STA-cgc** |
| | ) | **Cr. No. 2:11-cr-20221-STA-1** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

---

**ORDER DENYING MOTION PURSUANT TO 28 U.S.C. § 2255,
DENYING MOTIONS TO AMEND,
DENYING CERTIFICATE OF APPEALABILITY,
CERTIFYING APPEAL WOULD NOT BE TAKEN IN GOOD FAITH,
AND
DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

---

Before the Court is the motion filed pursuant to 28 U.S.C. § 2255 by Gerald Berry, Bureau of Prisons register number 20559-076, an inmate at the Federal Correctional Institution in Otisville, New York (ECF No. 1), and his two motions to amend his § 2255 motion. (ECF Nos.11, 12.) The United States filed its response and answer to the original motion on May 27, 2014 (ECF No. 7), and Berry filed a reply to the response. (ECF No. 8.) The United States filed its response to the motions to amend on June 16, 2016. (ECF No. 18.) For the reasons stated below, the Court **DENIES** the motions to amend and **DENIES** the § 2255 Motion.

### Background

On March 29, 2006, Berry pled guilty to Count 1 of the indictment in *United States v. Berry,* No. 2:05-cr-20293-01-JDB (W.D. Tenn.). (No. 2:05-cr-20293, Plea Agreement, ECF No. 58.) At a hearing on September 14, 2006, Berry was sentenced to a term of imprisonment of fifty-one months, to run concurrent to the sentence imposed in *United States v. Berry,* No. 2:05-

1

cr-20295-JDB (W.D. Tenn.), to be followed by a three-year period of supervised release. (No. 2:05-cr-20293, Min. Entry, ECF No. 91.)

On May 13, 2011, the United States Probation Office filed a petition for warrant or summons for offender under supervision, which charged Berry with violating the conditions of his supervised release due to his arrest on April 13, 2011, by the Mid-South Electronic Crimes Task Force on two counts of forgery and identity theft and two counts of theft of property over $500. (No. 2:05-cr-20293, Pet. for Warrant or Summons, ECF No. 121.)

The conduct that formed the basis for the Probation Office's petition was the subject of a third federal indictment against Berry, *United States v. Berry,* No. 2:11-cr-20221-01-STA (W.D. Tenn.).[1] A grand jury charged Berry with fifteen counts of bank fraud in violation of 18 U.S.C. § 1344 and one count of identity theft in violation of 18 U.S.C. § 1028A(a). (No. 2:11-cr-20221, Indictment, ECF No. 1.) Because Berry was indigent, the Court appointed T. Clifton Harviel to represent him. (No. 2:11-cr-20221, Min. Entry and Not. Of App., ECF Nos. 21, 28.) Berry subsequently pled guilty to Count 1 of the indictment and was sentenced to a term of imprisonment of 78 months, with that sentence to be served consecutively to the 54-month sentence for the supervised release violations in Berry's prior cases. (No. 2:11-cr-20221, Am. J., ECF No. 107 (sealed).)

The plea was pursuant to a negotiated plea agreement with the United States. (No. 2:11-cr-20221, Plea Agreement, ECF No. 46.) In the plea agreement, Berry agreed to enter a voluntary plea of guilty to Count 1 of the indictment, which charged him with bank fraud. The United States agreed to dismiss any remaining counts. The parties stipulated that the loss for purposes of relevant conduct would be between $30,000 and $70,000. The United States agreed

---

[1] Berry is challenging his sentence in *United States v. Berry,* No. 2:11-cr-20221-01-STA (W.D. Tenn.), in the present § 2255 motion.

to recommend a sentence within the applicable guideline range and agreed that Berry would receive a reduction for acceptance of responsibility, provided he did not engage in conduct inconsistent with acceptance of responsibility. The plea agreement contained an appeal waiver provision. Berry agreed that, for the purpose of restitution, the Court could consider losses derived from counts of conviction and losses caused from dismissed counts and uncharged conduct. Above Berry's signature, the plea agreement stated the following:

> GERALD BERRY agrees that this plea agreement constitutes the entire agreement between himself and the United States and that no threats have been made to induce him to plead guilty. By signing this document, GERALD BERRY acknowledges that he has read this agreement, has discussed it with his attorney and understands it.

(No. 2:11-cr-20221, Plea Agreement at ¶ 9, ECF No. 46.)

On December 21, 2011, a hearing was held on Berry's change of plea. After the Court placed Berry under oath and Berry stated that he understood why he was in Court, the following exchange took place:

> COURT: Have you had an opportunity to discuss your case fully and completely with Mr. Harviel?
>
> DEFENDANT: Yes, Your Honor.
>
> COURT: Has he been able to explain to your satisfaction what the facts of the case are, what the law would be that would apply to those facts and what your options are about whether to plead guilty or proceed to trial?
>
> DEFENDANT: Yes, Your Honor.
>
> COURT: Are you satisfied with Mr. Harviel's representation of you in this matter?
>
> DEFENDANT: Yes, Your Honor.
>
> COURT: Have you had any type of medication or alcohol or anything of that nature within the last 72 hours?
>
> DEFENDANT: No, Your Honor.

COURT: Have you ever been treated for any type of mental health or emotional issues?

DEFENDANT: Yes, Your Honor.

COURT: How long ago was that?

DEFENDANT: Right before my incarceration.

COURT: And that was when?

DEFENDANT: 2010.

COURT: Okay. What kind of treatment was it, inpatient, outpatient?

DEFENDANT: Outpatient.

COURT: Outpatient?

DEFENDANT: (Nods head affirmatively).

COURT: How long did that last approximately?

DEFENDANT: Two months.

COURT: Okay. What were you being treated for, anxiety, depression, what?

DEFENDANT: Depression, bipolar.

COURT: Okay. And were you prescribed medication at that time?

DEFENDANT: Yes, Your Honor.

COURT: Did you take it for a period of time?

DEFENDANT: Yes, Your Honor.

COURT: Why are you currently not taking it?

DEFENDANT: They don't allow it at the facility that I'm at.

COURT: Have you been examined there?

DEFENDANT: No, Your Honor.

COURT: But you just—you are just not provided the medication?

DEFENDANT: Right.

COURT: Are you receiving any kind of counseling?

DEFENDANT: They check on me periodically.

COURT: Okay. Well, Mr. Berry, the thing I'm trying to determine and I want to be sure about is, one, that you understand what you are doing, that you are doing it freely and voluntarily, and that there is not anything going on in your life, you are not experiencing any kind of medical issues or emotional issues or anything that would make it either difficult or impossible for you to understand the consequences of what you are doing.

DEFENDANT: I comprehend.

COURT: Do you understand?

DEFENDANT: Yes, sir.

COURT: So you don't believe the fact that you had a period of time that where you were being treated for some emotional issues, you don't believe that you would in any way interfere or impair your ability to understand what you are doing here today?

DEFENDANT: No, Your Honor.

COURT: Okay, Mr. Berry, do you understand that under the laws of the United States you would be entitled to a trial by jury on the charge contained – or charges contained in the indictment?

DEFENDANT: Yes.

COURT: Do you understand that if we had a trial, you would be presumed to be innocent, and the government would have to prove that you were guilty by competent evidence beyond a reasonable doubt?

DEFENDANT: Yes, Your Honor.

COURT: Do you understand that if we had a trial, the government would have to put on witnesses here in the courtroom in your presence, and Mr. Harviel would have the right to cross-examine those witnesses?

(No. 2:11-cr-20221, TR Change of Plea Hearing, PageID 155 – 159, ECF No. 89.)

5

During the plea colloquy, the Court explained to Berry his right to a trial, that he would be presumed innocent if he went to trial, that the United States would bear the burden of proving the charges beyond a reasonable doubt, that Berry could confront and cross-examine witnesses, that Berry could choose whether to testify and his decision to testify or not to testify could not be used against him in any way, and that, if convicted, the Court would sentence Berry after reviewing a pre-sentence report. (*Id.*at PageID 159 - 161.).

After verifying that Berry had signed the plea agreement, the Court asked Berry if he had had an opportunity to discuss the terms and conditions contained in the plea agreement with Attorney Harviel before he signed it. Berry responded affirmatively. The Court then asked Berry if he fully understood the terms and conditions that were contained in the plea agreement before he signed, and Berry again responded affirmatively. (*Id.* at Page ID 165.) Berry denied being threatened to sign the agreement against his will and stated that he signed because he wanted to sign and because he believed it was the right thing for him. (*Id.* at PageID 171.)

Counsel for the United States then described the evidence that would have been presented at trial to substantiate the factual basis for Count 1.

> We would show that the banks which we listed in the introduction were all insured by the Federal Deposit Insurance Corporation which show that in February of 2011, Mr. Berry was released from the federal prison system where he had been convicted of bank fraud for cashing counterfeit checks with Judge Breen and was incarcerated at a halfway house when he started this scheme. He obtained I believe a number of counterfeit checks. He went to the Tennessee Department of Safety and received a fraudulent ID in the name of Dustin Chalpek. He would then fill out the checks as payable to Dustin Chalpek. He would use those to basically cash the checks. He would keep the amounts under $1,000.00. Specifically on February 14, 2011, he represented himself to be Dustin Chalpek at a First Tennessee Bank in the Western District of Tennessee and cashed a check for $558.19, and he was captured on the bank surveillance video doing that.

(*Id.* at PageID 172.)

When asked if the statements made by the Assistant United States Attorney ("AUSA") concerning his involvement in Count 1, i.e., attempting to negotiate a counterfeit check to First Tennessee Bank in the amount of $558.19, were substantially true and correct, Berry, through his attorney, wanted it clarified that Berry's co-defendant wrote the check although Berry presented it and cashed it. In response to the question by the Court, "Did you, Mr. Berry, on or about February 14th of 2011, attempt to negotiate a counterfeit check through the use of false and stolen identification in the name of Dustin Chalpek to First Tennessee Bank in the amount of $558.19?" Berry answered, "Yes." (*Id.* at PageID 173-174.) After finding that Berry's plea was knowing, voluntary, and informed and that a factual basis supported a conviction, the Court accepted the guilty plea. (*Id.* at PageID 174).

On July 31, 2012, a sentencing hearing was held. (No. 2:11-cr-20221, TR Sent. Hearing, ECF No. 90.) During the hearing, the United States called as witnesses Berry's co-defendant Cynthia Horton, Ingrid Rivas, a bank teller, and Michael Riddle, the case agent, to testify about Berry's leadership role in the offense for the purpose of a four point enhancement to the guideline calculation. (*Id.* at PageID 180-181.) Attorney Harviel called Rayna Rufus, Berry's mother, as a witness to attack the credibility of Horton. (*Id.*)

After considering the arguments of both parties and the applicable guideline factors, the Court found that the enhancement applied. (*Id.* at PageID 285-292.) The Court then sentenced Berry to 78 months imprisonment, which was the high end of the applicable sentencing guideline range, followed by three years of supervised release.[2] (*Id.* at PageID 311-317, 329-330.)

---

[2] The United States agreed to stipulate that the amount of loss was $42,185.85 and did not object to Attorney Harviel's request that the Court recommend the 500 hour drug rehabilitation program for Berry. (*Id.* at PageID 294-295.)

Pursuant to the parties' plea agreement, the United States moved to dismiss the remaining counts of the indictment at sentencing. (*Id.* at PageID 334.) At no time during the sentencing hearing did Berry express any dissatisfaction with the services of Attorney Harviel.

Despite agreeing to an appeal waiver in the plea agreement, Berry appealed his sentence. The United States Court of Appeals for the Sixth Circuit affirmed Berry's sentence. (COA Op., ECF No. 111.) The Sixth Circuit issued its mandate on November 22, 2013. (Mandate, ECF No. 112.) Berry did not petition the Supreme Court for a writ of certiorari.

### Request for Review Under *Johnson v. United States*

As an initial matter, the Court notes that, in addition to his § 2255 motion and motions to amend, Berry has filed a request for a review of his case alleging that the enhancement of his sentence under the residual clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C.A. § 924(e)(2)(B)(ii), is violative of the United States Constitution in light of the Supreme Court's ruling in *Johnson v. United States*.[3] (Notice, ECF No. 16.) Berry's *Johnson* claim has no merit.

Generally, a defendant convicted of being a felon-in-possession of a firearm pursuant to 18 U.S.C. § 922(g) is sentenced between zero to ten years in prison.[4] However, pursuant to the ACCA, a person who is a felon-in-possession of a firearm in violation of 18 U.S.C. § 922(g) and who has "three previous convictions... for a violent felony or a serious drug offense...committed on occasions different from one another...shall be... imprisoned for not less than fifteen years."[5]

---

[3] 135 S. Ct. 2551 (2015).

[4] 18 U.S.C. § 922(g).

[5] 18 U.S.C. § 924(e)(1).

In *Johnson v. United States*, the Supreme Court held that the imposition of an increased sentence under the ACCA's residual clause violates due process as guaranteed by the Fifth Amendment of the United States Constitution because the residual clause is so vague that it "denies fair notice to defendants and invites arbitrary enforcement by judges."[6] Berry was not sentenced as an armed career criminal pursuant to the ACCA. Instead, Berry's underlying charge of conviction was related to bank fraud. Consequently, *Johnson v. United States* provides no relief for Berry.

## § 2255 Claims

In his § 2255 motion, Berry raises two claims: ineffective assistance of counsel and prosecutorial misconduct. Berry specifically complains, *inter alia*, of Attorney Harviel's handling of co-defendant Cynthia Horton's testimony, the leadership-role sentencing enhancement that he received, and the failure of Attorney Harviel to call additional witnesses. Berry alleges prosecutorial misconduct claim in that the AUSA purportedly relied on perjured testimony during the sentencing hearing.

Pursuant to 28 U.S.C. § 2255(a),

[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of

---

[6] *Id.* at 2557.

fact or law that was so fundamental as to render the entire proceeding invalid."[7]

A § 2255 motion is not a substitute for a direct appeal.[8] "[N]onconstitutional claims that could have been raised on appeal, but were not, may not be asserted in collateral proceedings."[9] "Defendants must assert their claims in the ordinary course of trial and direct appeal."[10] This rule is not absolute:

> If claims have been forfeited by virtue of ineffective assistance of counsel, then relief under § 2255 would be available subject to the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In those rare instances where the defaulted claim is of an error not ordinarily cognizable or constitutional error, but the error is committed in a context that is so positively outrageous as to indicate a "complete miscarriage of justice," it seems to us that what is really being asserted is a violation of due process.[11]

Even constitutional claims that could have been raised on direct appeal, but were not, will be barred by procedural default unless the defendant demonstrates cause and prejudice sufficient to excuse his failure to raise those issues previously.[12] Alternatively, a defendant may obtain review of a procedurally defaulted claim by demonstrating that he is "actually innocent."[13] "[A] § 2255 motion may not be employed to relitigate an issue that was raised and considered on

---

[7] *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (internal quotation marks omitted).

[8] *See Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013).

[9] *Stone v. Powell*, 428 U.S. 465, 477 n.10 (1976).

[10] *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996).

[11] *Id.*

[12] *El-Nobani v. United States*, 287 F.3d 417, 420 (6th Cir. 2002) (withdrawal of guilty plea); *Peveler v. United States*, 269 F.3d 693, 698-99 (6th Cir. 2001) (new Supreme Court decision issued during pendency of direct appeal); *Phillip v. United States*, 229 F.3d 550, 552 (6th Cir. 2000) (trial errors).

[13] *Bousley v. United States*, 523 U.S. 614, 622 (1998).

direct appeal absent highly exceptional circumstances, such as an intervening change in the law."[14]

After a § 2255 motion is filed, it is reviewed by the Court and, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts. "If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order."[15] The movant is entitled to reply to the Government's response, and the Court may also direct the parties to provide additional information relating to the motion.[16]

"In reviewing a § 2255 motion in which a factual dispute arises, the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims."[17] "[N]o hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact."[18] The movant has the burden of proving that he is entitled to relief by a preponderance of the evidence.[19]

---

[14] *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999); *see also DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996) (same).

[15] *Id.*

[16] Rule 7, § 2255 Rules.

[17] *Valentine v. United States,* 488 F.3d 325, 333 (6th Cir. 2007) (internal quotation marks omitted).

[18] *Id.* (internal quotation marks omitted).

[19] *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

In the present case, Berry has not met that burden. He has not established an error of constitutional magnitude which had a substantial and injurious effect on his criminal proceedings because he has not presented sufficient facts showing that his Sixth Amendment right to effective assistance of counsel was violated. Nor has he established that there was a fundamental defect in the criminal proceedings which necessarily resulted in a complete miscarriage of justice or an error so egregious that it amounts to a violation of his constitutional right to due process of law.

**Analysis**

1. Ineffective Assistance of Counsel

Berry alleges that his attorney was ineffective at sentencing because he failed to argue against a four-point enhancement for Berry's leadership role, failed to challenge co-defendant Horton's testimony, failed to call witnesses to support his position, failed to represent his interests because of a conflict of interest, and failed to object to the breach of the plea agreement by the United States.

*Strickland v. Washington*[20] establishes the standard for an ineffective assistance claim. The defendant must show: (1) deficient performance by counsel and (2) prejudice to the defendant from the deficient performance.[21] To demonstrate prejudice in the course of a conviction entered on a guilty plea, a defendant must "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."[22] In analyzing prejudice,

---

[20] 466 U.S. 668 (1984).

[21] 466 U.S. at 687.

[22] *Hill*, 474 U.S. at 59.

> the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated.[23]

"Thus an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."[24]  In the context of sentencing, the Court looks to whether the result of the sentencing proceeding was unfair or unreliable.[25]

Berry complains that Attorney Harviel provided ineffective assistance of counsel by not arguing against a leadership enhancement for his role in the crime.  A sentencing court may enhance a defendant's sentence under § 3B1.1 provided that the conspiracy involved five or more participants and the defendant led or organized at least one of those participants.[26] In determining whether to enhance a defendant's sentence pursuant to this section, a district court should consider factors such as the exercise of decisionmaking authority, the nature of the defendant's participation in the commission of the offense, the recruitment of accomplices, the degree of participation in planning or organizing the offense, and the degree of control exercised over others.[27]

Here, there was sufficient evidence to establish Berry's leadership role, and, thus, Attorney Harviel was not ineffective for not succeeding in challenging the enhancement.

---

[23] *Lockhart v. Fretwell*, 506 U.S. 364, 368 (1993) (citing *United States v. Cronic*, 466 U.S. 648, 658 (1984)).

[24] *Lockhart v. Fretwell*, 506 U.S. at 369.

[25] *Id.* at 371.

[26] *See United States v. Bingham*, 81 F.3d 617, 629 (6th Cir. 1996); U.S.S.G. § 3B1.1(a) & cmt. n. 2.

[27] U.S.S.G. § 3B1.1 cmt. n. 4.

Contrary to Berry's arguments, the record shows that Attorney Harviel vigorously cross-examined the witnesses presented by the United States and argued against the enhancement; however, despite Attorney Harviel's efforts, the Court determined that Berry should receive the four-point sentencing enhancement:

> It appears to the court that Mr. Berry did exercise decision-making authority based on the testimony, that he recruited accomplices, that he claimed a larger share of the fruits of the crime, that he participated in planning and organizing of the offense, and that he exercise the degree of control and authority over others. This would include to some degree over Ms. Horton but certainly over Randy Jackson and the person who was identified as working for Darrell, and the other individuals that the court has already pointed out.[28]

Berry asserts that Attorney Harviel did not challenge co-defendant Horton's credibility and her testimony as to the number of people involved in the crime. To the contrary, Attorney Harviel did cross-examine Horton in an attempt to impeach her credibility. When Horton testified that she had a "learning disability in written concepts" to explain why she had not given a written statement in the case, Attorney Harviel asked her to read a portion of a Bible verse.[29] Attorney Harviel also cross-examined Horton on topics that she discussed with Berry, including having falsely announced a pregnancy, and about her relationship with another felon who taught her how to create bogus checks.[30] Attorney Harviel attempted to impeach Horton's reliability as a witness by arguing that she had a history of psychiatric problems that made her unable to "process what happens to her."[31] And, he questioned her ability to recall facts, noting that she

---

[28] (No. 2:11-cr-20221, TR Sent. Hearing, PageID 292, ECF No. 90.)

[29] (*Id.* at PageID 225- 226.)

[30] (*Id.* at PageID 232-234.)

[31] (*Id.* at PageID 282.)

had taken Valium and Seroquel before testifying.[32]  Moreover, as noted above, Attorney Harviel called a witness, Rayna Rufus, Berry's mother, to rebut Horton's answers on cross-examination.

In addition, Attorney Harviel pointed out that, at sentencing, the number of individuals that the United States contended were involved in the fraudulent scheme was different than the number alleged in prior pleadings of the United States.[33]  Attorney Harviel's efforts to defend against the application of the enhancement belie Berry's claim that his performance was deficient under *Strickland*.

Moreover, the Court finds that Berry was not prejudiced by his attorney's performance in that he has not shown that the resulting sentence would have been different if his attorney had cross-examined the witnesses differently or if he had called additional witnesses. The Court considered the credibility of all witnesses.  Regarding Horton, the Court acknowledged that she had recently received psychiatric treatment and was testifying in hopes of receiving the benefit of a §5K1.1 motion.[34]  The Court nonetheless found Horton's testimony credible regarding Berry's leadership role in the offense and the number of individuals involved in the criminal activity. The Court also gave credence to the testimony of the bank teller about how Berry behaved while in the bank – that Berry "was taking control of the situation and the women was following his orders."[35]

---

[32]  (*Id.* at PageID 283.)

[33]  (*Id.*)

[34]  (*Id.* at PageID 287, 290.)

[35]  (*Id.* at PageID 286.)

The Court questioned the credibility of Berry's mother in that she failed to answer questions directly and truthfully on cross-examination.[36]   Accordingly, the Court credited Horton's testimony over that of Berry's mother. Thus, no ineffective assistance of counsel existed.[37]

Although Berry complains that his attorney should have called Horton's parents to testify, as well as "Mr. Jackson" or "Mr. Ron Lax," Berry fails to assert facts as to what these witnesses would have testified to had they taken the stand.  It is speculative that these witnesses would have provided favorable information that would have caused a different result at the sentencing hearing.  Because Berry has failed to show how he was prejudiced by Attorney Harviel's decision not to call these witnesses, he is not entitled to relief.

Next, Berry alleges that an actual conflict of interest existed between him and Attorney Harviel because his attorney was paid by the United States.    A presumption of prejudice arises when the defendant demonstrates that his attorney actively represented conflicted interests.[38] A showing of (1) an actual conflict; and (2) an adverse effect on his counsel's performance will void the conviction.[39]

---

[36] (*Id.* at PageID 291.)

[37] *See Chambers v. United States*, 1993 WL 311998 *2 (6th Cir. 1993) (holding no violation of the constitution resulted from trial counsel's failure to object to what the defendant referred to as "perjured testimony" because the witness's trial testimony was found to be credible).

[38] *Mickens v. Taylor*, 535 U.S. 162, 166 – 167 (2002) (examining with approval *Holloway v. Arkansas*, 435 U.S. 475, 488 (1978); *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980); and *Wood v. Georgia*, 450 U.S. 261 (1981)).

[39] *Mickens*, 535 U.S. at 174.

It is well established that an indigent defendant has a fundamental right to a court-appointed attorney with the cost borne by the federal government.[40] Berry has not pointed to an "actual conflict or impairment of his interests," and he is not entitled to relief merely because his appointed counsel received payment for his services from the government.[41]

Berry also claims that "conversations" between his attorney and the AUSA were detrimental to him and prejudiced his defense. However, he has provided no facts about the content of those conversations or how he was prejudiced. The Court takes judicial notice of the fact that communication between defense counsel and the prosecution is essential to a defense attorney's effective assistance. If the defense attorney refused to have any discussions with the prosecutor, such behavior could arguably fall outside "the range of reasonable professional assistance."[42] Therefore this claim is also without merit.

Finally, Berry alleges that the United States breached the plea agreement and that Attorney Harviel should have objected to the breach. This allegation is not supported by the record which shows that the United States honored its obligations under the written plea agreement. The plea agreement contained a clause stating that the plea agreement represented the entire agreement between the parties.[43]

---

[40] *See Gideon v. Wainwright*, 372 U.S. 335 (1963) and its progeny.

[41] *See United States v. Tronson*, 2000 WL 658073 (6th Cir. 2000) ("No violation exists [when] the conflict is irrelevant or merely hypothetical.").

[42] *Strickland*, 466 U.S. at 689.

[43] Berry has submitted an affidavit in which he states that, in addition to the written plea agreement, the AUSA made certain oral promises to him in exchange for his guilty plea. (Aff., ECF No. 21.) However, at the change of plea hearing, in reciting the terms of the plea agreement, the AUSA specifically stated that the plea agreement constituted the entire agreement between Berry and the United States. (No. 2:11-cr-20221, TR Change of Plea Proceedings, PageID 168, ECF No. 89.) The Court then asked if Berry had agreed to the terms and conditions of the plea

As previously discussed, the United States dismissed the remaining counts of the indictment at sentencing, agreed that the amount of loss was between $30,000 and $70,000 for the purposes of relevant conduct, and recommended a sentence within the applicable guideline range. Also, the United States did not object to Berry's receiving a two point reduction for acceptance of responsibility. The agreement was silent as to the enhancement for Berry's leadership role in the offense, so any decision by the United States to pursue that enhancement could not breach the plea agreement. Thus, Berry's argument is without merit because Attorney Harviel could not have been deficient in failing to object to an event that did not occur.

Berry has not carried his burden of showing that Attorney Harviel's representation fell below an objective standard of reasonableness and has not shown ineffectiveness or actual prejudice required by *Strickland*; thus, his argument that he received ineffective assistance is without merit, and this claim is **DISMISSED.**

2. Prosecutorial Misconduct

Berry alleges that the AUSA handling the case at sentencing knowingly introduced perjured testimony. A prosecutor cannot knowingly present false testimony or fail to correct testimony the prosecutor knows to be false,[44] and the burden of establishing false testimony is on Berry.[45] "To prevail under *Napue*, defendant must show (1) that [witness'] testimony was

---

agreement as stated by the AUSA and he responded "Yes, Your Honor." (*Id.*) Berry cannot now contradict his previously sworn testimony. Furthermore, an integration clause ordinarily prevents a § 2255 movant from claiming that other promises were included in the plea agreement. *See Osuna v. United States*, 2011 WL 5088710 at *3 (W.D. Mich. Oct. 25, 2011) (citing *United States v. Hunt*, 205 F.3d 931, 935 (6th Cir. 2001)).

[44] *Napue v. Illinois*, 360 U.S. 264 (1959).

[45] *See Brooks v. Tennessee*, 626 F.3d 878, 895 (6th Cir. 2010).

actually false, (2) that the testimony was material, and (3) that the prosecution knew that her testimony was false."[46]

Berry's allegations of prosecutorial misconduct are not supported by the record. Berry says the United States put a "well known perjurer on the stand," but he provides no factual support for this allegation.[47]  He also alleges that the United States was in possession of evidence that Horton "constantly fabricated [sic] to federal agents during their investigation." Again, no specific evidence is identified in the allegation. The Court weighed Horton's testimony and the discrepancies that were identified by Attorney Harviel during cross-examination and found her to be credible, as discussed above. Berry has not shown that Horton's testimony was actually false or that the AUSA knew it to be false.

Berry also claims that the United States knew that he "did not recruit eight additional people as fabricated by Ms. Horton."  The testimony was that the eight people included both Horton and Berry, not eight participants in addition to them. The United States presented testimony that more than five people were involved in the scheme.[48] Thus, Berry's claim that the prosecutor would not have been able "to produce 8 confederates before a jury" is not relevant because at sentencing the United States only had to present evidence that five or more people were involved. Thus, there is nothing in the record that supports a finding that AUSA knowingly

---

[46]  *Id.*

[47]   Prior to Horton's testimony, the AUSA advised the Court that Horton "had numerous psychological issues" and was a resident of a psychiatric facility at the time of her testimony. (No. 2:11-cr-20221, TR Sent. Hearing, PageID 205, ECF No. 90.)

[48]   Horton testified to the involvement of the following:  Cederick Hill, Randy Jackson, Scott Hargrove, "Darrell," "Polo," an unidentified person who worked for Darrell, her ex-husband and his wife Tina, as well as herself and Berry.  (*Id.* at PageID 288.)

presented false testimony to the Court.  Therefore, Berry is not entitled to relief on this claim, and this claim is **DISMISSED.**

## Motions to Amend

A motion made under § 2255 must be made within the one-year limitations period set out by the statute.  The one-year limit begins running from the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. 2255(f).  In this case, subparts 2, 3 and 4 of this provision are not applicable because Berry has not alleged that the United States prevented his motion; Berry is not asserting a right recently recognized by the Supreme Court; and Berry has not alleged an excusable delay in discovering facts supporting his motion.

Proposed amendments and supplements must be filed within the one-year statute of limitations. When a criminal defendant unsuccessfully pursues a direct appeal of his conviction but does not petition for a writ of certiorari from the Supreme Court, then the one-year limitation period of § 2255 starts when the ninety day time period for filing a petition for certiorari expires. [49]Thus, Berry's time to file a § 2255 petition ended on February 21, 2015. Berry timely filed his initial § 2555 motion on January 31, 2014. However, Berry did not file his motions to amend

---

[49]  *Clay v. United States*, 537 U.S. 522, 525 (2003).

until October 27, 2015 (ECF No. 11) and February 22, 2016 (ECF No. 12), which was after the expiration of the time to file a § 2255 motion.

A claim raised in an untimely supplemental pleading can be deemed to have been filed on the same date of the timely original § 2255 motion if the supplemental claim "relates back" to the original § 2255 motion.[50] Under Rule 15(c), an amendment or supplement outside the one-year statute of limitations can "relate back to the date of the original pleading if the original and amended pleadings 'ar[i]se out of the conduct, transaction, or occurrence." However, an untimely motion to amend or supplement a § 2255 motion cannot relate back if it raises a new ground for relief requiring different facts than those claims raised in the original § 2255 motion.[51]

The Supreme Court has rejected a broad reading of "conduct, transaction, or occurrence" when determining whether an amended habeas petition relates back to the original petition and has held that an amended petition does not relate back "when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth."[52] "[R]elation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims."[53] If an amendment is offered for the purpose of merely amplifying the facts already alleged in support of a particular claim, the amendment relates back

---

[50]  Fed. R. Civ. P. Rule 15(c); *see also Mayle v. Felix*, 545 U.S. 644, 655 (2005).

[51]  *Taylor v. Myers*, 345 F. Supp. 855, 860 (W.D. Tenn. 2003); *see also Anderson v. United States*, 2002 WL 857742 *3 (6th Cir. May 3, 2002); *Oleson v. United States*, 2001 WL 1631828 (6th Cir. Dec. 14, 2001).

[52]  *Mayle v. Felix*, 545 U.S. 644, 650 (2005).

[53]  *Id.* at 658 (quoting Fed. R. Civ. P. 15(c)(1)(B)).

to the date of the original petition.[54] However, if a movant seeks to "introduce a new legal theory based on facts different from those underlying the timely claims," the amendment should not relate back and should therefore be time-barred.[55]

In the present case, Berry contends that his supplements relate back to his original claim that Attorney Harviel was ineffective for failing to object to the alleged breach of the plea agreement. However, Berry now argues that there were irregularities in the negotiation and drafting of the plea agreement. A claim that his attorney was ineffective during the negotiating and drafting of the plea agreement is a separate claim of ineffective assistance of counsel and does not relate back to the grounds raised in the original petition. Similarly, Berry now alleges that he was induced to plead guilty by promises outside of the plea agreement allegedly made by the AUSA. These claims are unrelated to Attorney Harviel's alleged failure to object to the purported breach of the plea agreement. Failure to negotiate and draft effectively are different from a failure to object to a breach of a signed, final agreement. As such, these newly-raised claims are time-barred by the statute of limitations.

Berry also attempts to add claims that the AUSA breached the plea agreement by pursuing a leadership enhancement and failing to move for the third point on acceptance of responsibility. To the extent that Berry is arguing prosecutorial misconduct for these alleged breaches, this is a new claim not raised in the original § 2255 and is time-barred.

Even if the Court were to consider Berry's supplemental claim that additional promises

---

[54] *See Atchley v. United States*, 2011 WL 1532074 at *2 (E.D. Tenn. Apr. 21, 2011) (citing *United States v. Hicks*, 283 F.3d 380, 388 (D.C. Cir. 2002).

[55] *Hicks*, 283 F.3d at 388.

were made to him to induce his guilty plea, the Court would find no merit in that claim. Berry's proposed supplement states that "promises and inducements" made by the AUSA "ultimately influenced [his] decision to plead guilty with the **hope** of a concurrent recommendation towards his supervise[d] release violation sentenced and at a minimum a 2-point enhancement for the potential leadership enhancement."[56] Furthermore, "there was no discussion as to 3E1.1's acceptance of responsibility," and Berry merely "**assumed** that a full 2 plus the 3rd level acceptance would be awarded."[57] Berry's unrealized hopes and assumptions cannot form the basis of a breach of plea agreement claim.

Moreover, the plea agreement's silence on this enhancement is dispositive in that it states that the written "plea agreement constitutes the entire agreement between [Berry] and the United States. . . ."[58] Because the plea agreement did not discuss the leadership enhancement, Attorney Harviel could not have been deficient in his performance for not objecting to the AUSA's decision to pursue the enhancement.

Berry's argument regarding the obligation of the United States to make a motion for the third point on acceptance of responsibility is also without merit. The third point for acceptance of responsibility under U.S.S.G § 3E1.1 depends entirely upon the United States' motion, and the United States is not required to move for the extra point just because of a guilty plea.[59] Here, as

---

[56] (Mot. to Suppl., p. 4, ECF No. 11 (emphasis added.))

[57] (*Id.* (emphasis added.))

[58] (No. 2:11-cr-20221, Plea Agreement, PageID 73-74, ECF No. 46.)

[59] *United States v. Lapsins*, 570 F.3d 758, 770-71 (6th Cir. 2009); *United States v. Smith*, 429 F.3d 620 (6th Cir. 2005); *see also United States v. Collins*, 683 F.3d 697, 704 (6th Cir. 2012) (even after guilty plea, government may withhold one-level reduction because defendant required government to litigate motion to suppress).

explained by the AUSA during the sentencing hearing, the United States was forced to prepare

for a contested hearing as a result of the objections filed by Berry:

> [I]n filing this large number of objections, some of these were just out and out
> false, particularly objection 19 in the second supplemental that said he had no
> knowledge of Ms. Horton's activity in 28, 29, 30, 31, 32 and paragraph 17.
> Obviously, the court has seen the video today of . . . Mr. Berry standing behind
> Ms. Horton and the court's finding that he was directing Ms. Horton and
> providing all the checks. So by filing this false – false allegation the United States
> has had to expend significant resources in preparing for this hearing.[60]

Under the circumstances, it was not deficient for Attorney Harviel not to challenge the decision

of the United States not to make the motion for the third point, which was in the sole discretion

of the United States.

For these reasons, Berry's motions to amend or supplement his original § 2255 motion

are **DENIED**.

Because every issue presented by Berry has been dismissed, his § 2255 Motion is

**DENIED**. Judgment shall be entered for the United States.

## Appeal Issues

Pursuant to 28 U.S.C. § 2253(c)(1), the district court is required to evaluate the

appealability of its decision denying a § 2255 motion and to issue a certificate of appealability

("COA") "only if the applicant has made a substantial showing of the denial of a constitutional

right."[61]  No § 2255 movant may appeal without this certificate.

A COA may issue only if the movant has made a substantial showing of the denial of a

constitutional right, and the COA must indicate the specific issue or issues that satisfy the

---

[60]  (No. 2:11-cr-20221, TR Sent. Hearing, PageID 308-309, ECF No. 90.)  The United States did
not oppose a two level reduction for acceptance of responsibility.  (*Id.*)

[61]  28 U.S.C. § 2253(c)(2); *see also* Fed. R. App. P. 22(b).

required showing. 28 U.S.C. § 2253(c)(2), (3). A "substantial showing" is made when the movant demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."[62] A COA does not require a showing that the appeal will succeed.[63] Courts should not issue a COA as a matter of course.[64]

In this case, for the reasons previously stated, Berry's claims are without merit and, therefore, he cannot present a question of some substance about which reasonable jurists could differ. The Court, therefore, **DENIES** a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. §§ 1915(a)-(b), does not apply to appeals of orders denying § 2255 motions.[65] Rather, to appeal *in forma pauperis* in a § 2255 case and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a).[66] Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit.[67] However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or

---

[62] *Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003) (citation omitted).

[63] *Id.* at 337.

[64] *Bradley v. Birkett*, 156 F. App'x 771, 773 (6th Cir. 2005).

[65] *Kincade v. Sparkman*, 117 F.3d 949, 951 (6th Cir. 1997).

[66] *Id.* at 952.

[67] Fed. R. App. P. 24(a)(1).

otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court.[68]

In this case, for the same reasons that the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is, therefore, **CERTIFIED**, pursuant to Federal Rule of Appellate Procedure 24(a), that any appeal in this matter would not be taken in good faith, and leave to appeal *in forma pauperis* is **DENIED**. If Berry files a notice of appeal, he must also pay the full appellate filing fee, 28 U.S.C. §§ 1913, 1917, or file a motion to proceed *in forma pauperis* and supporting affidavit in the United States Court of Appeals for the Sixth Circuit within thirty (30) days.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: January 30, 2017

---

[68] *See* Fed. R. App. P. 24(a)(4)-(5).